UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY LUMM,

    Plaintiff,　　　　　　　　　　　　　　　　　Hon. Janet T. Neff

v.　　　　　　　　　　　　　　　　　　　　　　　　Case No. 1:09-CV-756

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 22 years of age at the time of the ALJ's decision. (Tr. 25-26). She successfully completed high school and worked previously as a housekeeper. (Tr. 25).

Plaintiff applied for benefits on December 29, 2005, alleging that she had been disabled since November 19, 1990, due to renal failure, diabetes, ADD, and depression. (Tr. 52-53, 99). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-51). On June 12, 2008, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff, Plaintiff's father, and vocational expert, Susan Rowe. (Tr. 625-69). In a written decision dated November 10, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 20-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-12). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

Plaintiff was born on August 26, 1986. (Tr. 52). She suffered kidney failure as a young child and received a donor kidney in 1991. (Tr. 158, 175-78). Plaintiff subsequently experienced "recurrent acute rejection" and "chronic rejection" of the donor kidney and was compelled to resume "chronic dialysis" in July 2003 as she was suffering "end-stage renal failure." (Tr. 158, 175-78, 227-28). During this time, Plaintiff suffered "a splenic infarct and she was left, after prolonged hospitalization, with exogenous, as well as endogenous deficiency of pancreatic function." (Tr. 236). Plaintiff underwent a second kidney transplant on December 1, 2003. (Tr. 175-77, 469, 560-68).

On January 19, 2004, Plaintiff was examined by Dr. Daniel Legault. (Tr. 163-64). Plaintiff reported that she was not experiencing fever, lethargy, or difficulty with urination. (Tr. 163). Plaintiff also reported that she recently returned to school. (Tr. 163). The results of an examination were unremarkable. (Tr. 163). The doctor indicated that Plaintiff "will be continued on triple immunosuppressant medications indefinitely, due to this being her second transplant and the multiple complications suffered with [the] first." (Tr. 163). Dr. Legault also observed that Plaintiff suffered from hypertension, thrombocytosis, and type I diabetes. (Tr. 163-64).

Treatment notes dated March 25, 2004, indicate that Plaintiff "has resumed presumably normal kidney function." (Tr. 373). Treatment notes dated June 11, 2004, indicate that Plaintiff "has generally felt well." (Tr. 158). She denied experiencing fevers, chills, dysuria, hematuria, allograft discomfort, nausea, vomiting, dyspepsia, or abdominal pain. (Tr. 158). Plaintiff reported that her "appetite is intact" and that "her blood sugars have been under reasonable control." (Tr. 158).

On June 17, 2004, Plaintiff reported that "she takes many medications related to diabetes and her transplant medication, but realizes the importance of medication and is able to keep it in perspective and cope with it fairly well." (Tr. 370). Plaintiff's mother reported that she "has no concerns." (Tr. 370). On June 30, 2004, Plaintiff underwent surgery to treat a right brachiocephalic aneurysm.[1] (Tr. 317).

On November 11, 2004, Plaintiff reported that "she is feeling much better" since receiving her second kidney transplant. (Tr. 360). Treatment notes dated June 10, 2005, indicate that Plaintiff "reports no significant complications with regards to her transplant." (Tr. 183).

During a June 16, 2005 examination, Plaintiff reported that "the second transplant has been very successful." (Tr. 345). Plaintiff denied experiencing depression and indicated that "she is typically in a good mood." (Tr. 345). Plaintiff also reported that "this past year she took one semester of school at KVCC in the fall." (Tr. 345). On July 29, 2005, Plaintiff reported that the Ritalin and Zoloft she was taking were "working well" without side effects. (Tr. 242).

Treatment notes dated September 16, 2005, indicate that Plaintff experiences "a severe immune deficiency" due to her kidney transplant. (Tr. 200).

On October 10, 2005, Plaintiff underwent a bilateral myringotomy[2] treat her chronic tubotympanitis. (Tr. 207-10).

On February 17, 2006, Dr. Legault characterized Plaintiff's condition, vis-a-vis her kidney transplant, as "clinically stable." (Tr. 307).

---

[1] The brachiocephalic artery supplies blood to the right arm and head. *See* Brachiocephalic Artery, available at http://dictionary.reference.com/browse/brachiocephalic+artery (last visited on September 22, 2010).

[2] A myringotomy is a surgical procedure in which a small incision is made in the eardrum and a tube inserted to provide ventilation. *See* Myringotomy, available at http://www.medicinenet.com/ear_tubes/article.htm (last visited on September 22, 2010).

On May 3, 2006, Plaintiff participated in a consultive examination conducted by George Starrett, Ed.D. (Tr. 266-69). Plaintiff reported that she experiences ADHD and depression. (Tr. 266). Plaintiff reported that "her depressive symptoms have improved with medication, but that she continues to have periods of a depressed mood." (Tr. 266). Plaintiff's father reported that "when [Plaintiff] does not take her medications that she is 'bouncing off the walls, and she is not pleasant to get along with.'" (Tr. 266). He reported, however, that Plaintiff's mood was "much more stable" with medication. (Tr. 266).

Plaintiff reported that she was presently employed part-time as a waitress (working from 11 a.m. until either 3 p.m. or 5 p.m.). (Tr. 267). Plaintiff reported that she performs various household chores such as vacuuming, dusting, cleaning her room, and washing dishes. (Tr. 267). Plaintiff reported that she "functions independently with regard to checking her insulin levels and takes her own medications." (Tr. 267). The results of a mental status examination were unremarkable. (Tr. 267-68). Plaintiff was diagnosed with mood disorder and ADHD. (Tr. 269). Her GAF score was rated as 75.[3] (Tr. 269).

On August 7, 2006, Plaintiff was examined by Dr. Legault. (Tr. 471). Plaintiff reported that she "feels quite well" and "has no new complaints." (Tr. 471). The results of an examination were unremarkable. (Tr. 471). The doctor reported that Plaintiff was experiencing "excellent renal function" and "appears stable." (Tr. 471). The doctor also reported that Plaintiff's hypertension was "well controlled" and her diabetes was under "fair" control. (Tr. 471). Treatment notes dated August 9, 2006, indicate that Plaintiff "is exercising more." (Tr. 443).

---

[3] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 75 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning." *Id.* at 34.

Treatment notes dated February 9, 2007, indicate that Plaintiff required "replenishment of her pancreatic enzymes" because "her pancreas has essentially disappeared from the CT scan." (Tr. 431).

On March 6, 2007, Plaintiff was examined by Dr. Legault. (Tr. 469-70). Plaintiff reported that she "continues to have no difficulties in relation to her renal transplant." (Tr. 469). Plaintiff also reported that she was "presently working at the Radisson full time in the Housekeeping area without any particular work restrictions." (Tr. 469). Plaintiff did report, however, that "this is somewhat tiring." (Tr. 469). The results of an examination were unremarkable. (Tr. 469). Dr. Legault reported that Plaintiff was experiencing "excellent renal function on triple immunosuppression." (Tr. 469). The doctor reported that Plaintiff's hypertension was "well controlled." (Tr. 469). With respect to Plaintiff's diabetes, the doctor observed that Plaintiff "is quite fanciful about her glycemic control, she states that her blood sugars are usually less than 180, although I am skeptical on her frequency of glycemic measurement. Her diet is less than desirable, and [she] frequently utilizes fast food alternatives." (Tr. 470).

On June 4, 2007, Plaintiff reported that she "has been doing well" and was attending school. (Tr. 465). Plaintiff indicated that she has "occasional diarrhea" if she forgets to take her pancreatic enzyme supplement. (Tr. 465).

Treatment notes dated July 17, 2007, indicate that Plaintiff "exercises about three days a week for about 15 minutes." (Tr. 425). Plaintiff reported that she "is taking college classes." (Tr. 425). She indicated that "her concentration is okay, and her grades are doing reasonably well, but she does have concerns about her moods." (Tr. 425). The results of an examination were unremarkable. (Tr. 425).

7

On October 1, 2007, Plaintiff was examined by Dr. Legault. (Tr. 463-64). Plaintiff reported that she recently underwent "bilateral myringotomy tube placement" which "has been helpful." (Tr. 463). Plaintiff also reported "improved blood sugars." (Tr. 463). Plaintiff reported that she was not experiencing pain or any symptoms consistent with urinary tract infections. (Tr. 463). Plaintiff also reported that she continued to attend college. (Tr. 463). Dr. Legault reported that Plaintiff's "renal function remains stable" with "no escalation of her serum creatinine." (Tr. 463). The doctor reported that Plaintiff's hypertension was "well-controlled" with a "minimal dose" of medication. (Tr. 463). The doctor also reported that Plaintiff had experienced a "marked improvement" in her blood sugars. (Tr. 464).

On March 31, 2008, Plaintiff was examined by Dr. J. M. Millermaier. (Tr. 499). With respect to her ADD, Plaintiff reported that she was "doing quite well" with her current medical regimen. (Tr. 499). Plaintiff reported that she was working and taking a single college course. (Tr. 499). The results of an examination were unremarkable. (Tr. 499). The doctor noted that Plaintiff's diabetes was "well controlled." (Tr. 499). The doctor also reported that Plaintiff's dysthymia was "managed well" with medication. (Tr. 499). Dr. Millermaier reported that Plaintiff was presently experiencing "normal renal function." (Tr. 499). With respect to Plaintiff's "pancreatic insufficiency/failure," the doctor indicated that Plaintiff would continue her current medication regimen. (Tr. 499).

On June 13, 2008, Dr. Millermaier reported that Plaintiff is "unable to work more than 4 hours /day due to multiple medical problems." (Tr. 461).

At the administrative hearing, Plaintiff testified that she was presently working 25 hours weekly as a prep cook at the Radisson. (Tr. 634). She indicated that she "switched out" of

8

the housekeeping department because it was "really hard on [her] back." (Tr. 634). Plaintiff indicated that her previous jobs were also part-time in nature. (Tr. 634-35). Plaintiff testified that she was unable in the past to maintain a full-time work schedule. (Tr. 661-62). Plaintiff testified that she exercises by riding her bike and walking. (Tr. 641-42). Plaintiff indicated that she goes shopping and to movies with her friends. (Tr. 642-43). Plaintiff testified that she previously attended college on a part-time basis, but was not presently taking any classes. (Tr. 632).

Plaintiff testified that because of her general state of health she is forced to be absent from work approximately one day each month. (Tr. 647). Plaintiff testified that sometimes she was absent to attend doctor appointments, but that on other occasions she "had to call in because [she has] been really, really tired." (Tr. 647). She indicated that her current work supervisors "make allowances and tolerate [her] schedule issues." (Tr. 647). Plaintiff also testified that she has to check her blood sugar 7-9 times daily and has to inject herself with insulin "probably ten times a day." (Tr. 648). Plaintiff reported that she was unable to lift "much" and could not walk "long distances." (Tr. 649).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffers from (1) history of kidney transplants and end stage renal disease; (2) type I diabetes; (3) attention deficit disorder (ADD); and (4) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-23). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could

perform despite her limitations. (Tr. 25-26). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the

---

[4]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light[5] work subject to the following limitations: (1) she requires a sit/stand option; (2) she should not climb ladders, ropes, or scaffolds; (3) she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and (4) she should avoid exposure to fumes, odors, dusts, gases, poor ventilation, and extreme temperatures. (Tr. 23).

The ALJ determined that Plaintiff could not perform her past relevant work as a housekeeper, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Susan Rowe.

The vocational expert testified that there existed in the national economy approximately 19,700 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 662-66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

a. Plaintiff does not meet the Requirements of a Listed Impairment

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that her condition satisfies Section 6.02B of the Listing. Plaintiff bears the burden of establishing that she satisfies a Listed impairment. *See, e.g., Bingaman v. Commissioner of Social Security*, 186 Fed. Appx. 642, 645 (6th Cir., June 29, 2006).

Section 6.02B of the Listing provides as follows:

Impairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months. With:

B. Kidney transplantation. Consider under a disability for 12 months following surgery; thereafter, evaluate the residual impairment (see 6.00E2).

Section 6.00E2 provides as follows:

Kidney transplantation (6.02B). If you have undergone kidney transplantation, we will consider you to be disabled for 12 months

12

following the surgery because, during the first year, there is a greater likelihood of rejection of the organ and recurrent infection. After the first year posttransplantation, we will base our continuing disability evaluation on your residual impairment(s). We will include absence of symptoms, signs, and laboratory findings indicative of kidney dysfunction in our consideration of whether medical improvement (as defined in §§404.1579(b)(1) and (c)(1), 404.1594(b)(1) and (c)(1), 416.994(b)(1)(i) and (b)(2)(i), or 416.994a, as appropriate) has occurred. We will consider the:

a. Occurrence of rejection episodes.
b. Side effects of immunosuppressants, including corticosteroids.
c. Frequency of any renal infections.
d. Presence of systemic complications such as other infections, neuropathy, or deterioration of other organ systems.

As Defendant correctly notes, to prevail in a claim for SSI benefits Plaintiff must establish that she was disabled "on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("[t]he proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date"); *see also*, *Kruse v. Commissioner of Social Security*, 2009 WL 902440 at *4 (W.D. Mich., Apr. 2, 2009) (same).

Plaintiff submitted her application for SSI benefits on December 29, 2005, more than two years after her second kidney transplant. Thus, Plaintiff does not qualify for the 12 month period of presumptive disability. Plaintiff has also failed to carry her burden of establishing that she satisfies the requirements of Section 6.00E2. As detailed above, the medical evidence reveals that Plaintiff's second kidney transplant was successful and that she thereafter resumed normal kidney function without complication. The ALJ found that Plaintiff failed to satisfy the requirements of this Listing, a decision which is supported by substantial evidence.

        b.       The ALJ Failed to Properly Evaluate Dr. Millermaier's Opinion

On June 13, 2008, Dr. Millermaier reported that Plaintiff is "unable to work more than 4 hours /day due to multiple medical problems." (Tr. 461). The ALJ accorded this opinion "little weight." (Tr. 25). Plaintiff asserts that because Dr. Millermaier was her treating physician, the ALJ was obligated to accord controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the

ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The entirety of the ALJ's analysis and rejection of Dr. Millermaier's opinion is contained in a single statement: "The claimant's level of activity that includes caring for herself, going to school and working on a part-time basis is not consistent with the statement." (Tr. 25). This conclusion enjoys scant support in the record. Plaintiff's reported activities are in no way inconsistent with Dr. Millermaier's opinion that Plaintiff is capable of no more than part-time work. Plaintiff has consistently reported that she is unable to work on a full-time basis due to the effects and/or complications from her impairments. While Plaintiff has attended college classes, she testified that she only attended part-time. Moreover, Plaintiff testified that she was not presently attending college, which was confirmed by her father's testimony. Finally, while a claimant's ability to care for herself is a relevant consideration, the fact that Plaintiff is able to care for herself hardly leads to the conclusion that she is capable, in light of her myriad impairments, of performing more than part-time work. In sum, there does not exist substantial evidence to support the ALJ's decision to discount Dr. Millermaier's opinion.

c. The ALJ Failed to Properly Assess Plaintiff's Subjective Allegations

As previously noted, Plaintiff testified that she is not capable of performing work on a full-time basis due to the effects of her various impairments. In assessing Plaintiff's credibility, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 24-25). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

16

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ based his decision to discount Plaintiff's subjective allegations on her reported level of activity. As discussed in the preceding section, Plaintiff's reported activities are not inconsistent with her subjective allegations. Moreover, Plaintiff's subjective allegations are not inconsistent with the medical evidence. The Court, therefore, finds that the ALJ's decision to discount Plaintiff's subjective allegations is not supported by substantial evidence.

    d.  There does not exist Compelling Evidence that Plaintiff is Disabled

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. Plaintiff's medical condition and medical history is quite complex and the proper evaluation of such is beyond the expertise and authority of this Court. To resolve Plaintiff's claim for benefits would require the Court to make factual determinations which it is neither qualified nor authorized to make. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: October 1, 2010 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge